IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, NORTHERN DIVISION

| UNITED STATES OF AMERICA | **MEMORANDUM DECISION AND ORDER** |
|---|---|
| Plaintiff, | |
| v. | Case No. 1:12-cr-00006 CW |
| ANDREW NATHAN GARCIA, | Judge Clark Waddoups |
| Defendant. | |

The court heard oral argument on Defendant's Motion for Franks Hearing (Dkt. No. 37) on July 2, 2013. Defendant seeks a hearing under *Franks v. Delaware* to elicit evidence surrounding Detective Derek Draper's statements contained in the Affidavit for Search Warrant which he prepared on September 23, 2011 for the purpose of obtaining a search warrant for Defendant's home. *See* Aff. Search Warrant No. 1103981, Ex. A to Plf.'s Resp. Mot. Franks Hrg. (Dkt. No. 40). For the reasons discussed below, the court grants Defendant's motion. Because the court finds that a *Franks* hearing is warranted, it will stay the Motion to Suppress (Dkt. No. 36) until resolution of the *Franks* hearing.

## **BACKGROUND**

At this stage of the proceedings, the relevant factual background derives virtually entirely from Detective Draper's Affidavit for Search Warrant, as quoted below with paragraph numbers added for convenience:

> [1.] On 05-06-2010, Agent Keyes responded to 807 W. Capitol St. to investigate a complaint of drug activity at the address. Agent Keyes spoke with Martin Garcia who gave Agent Keyes consent to search his residence. Agent Keyes located a

glass drug bong which contained a small amount of red liquid inside commonly used for flavoring and smoking Methamphetamine.

[2.] During the first week of July 2011, a confidential informant hereby referred to as CI#1, informed [Detective Draper] that Andrew Garcia is selling multiple pounds of Methamphetamine from his home at 807 W. Capital [sic] St.

[3.] During the first week of August 2011, a confidential informant hereby referred to as CI#2, informed Agent Jensen that Andrew Garcia and his brother Marti Garcia who live at 807 W. Capitol St., were selling multiple pounds of Methamphetamine from their home.

[4.] During the first week of August 2011, a confidential informant hereby referred to as CI#3, informed Agent Burrell that Andrew Garcia was selling multiple pounds of Methamphetamine from his home at 807 W. Capitol St.

[5.] During the first week of September 2011, a confidential informant hereby referred to as CI#4, informed Agent Grogan that Andrew Garcia and Marti Garcia were selling multiple pounds of Methamphetamine from their home at 807 W. Capitol St. CI#4 informed agent Grogan that he/she was purchasing one pound of Methamphetamine from Marti Garcia every day.

[6.] During the fourth week of September 2011, a confidential informant hereby referred to as CI#5, informed [Detective Draper] that Andrew Garcia was his/her supplier and sell's [sic] large amounts of Methamphetamine a week from his home at 807 W. Capitol St. CI#5 told [Detective Draper] that Garcia was supposed to get a shipment of narcotics in on 09-22-2011.

[7.] During the fourth week of September 2011, a confidential informant hereby referred to as CI#6, informed [Detective Draper] that he/she had purchased methamphetamine from Andrew Garcia at 807 West Capital [sic]. CI#6 said large quantities of methamphetamine were being stored at and sold from this location. CI#6 said he/she was aware that large quantities of methamphetamine were currently being stored at and sold from 807 West Capital [sic].

[8.] Andrew Garcia Criminal History
　　Apr. 2004 Convicted of Obstructing Police
　　July 2004 Convicted of Poss/Use of Controlled Substance
　　July 2004 Convicted of poss. of Narcotic possession [sic]
　　July 2004 Convicted of Dangerous Drugs
　　Apr. 2005 Convicted of False Information to police officer
　　Oct. 2006 Convicted of Fail to stop at command of police
　　Oct. 2006 Convicted of Dangerous Drugs

[9.] Martin Garcia Criminal History
　　Jun. 1988 Convicted Poss. of Controlled Substance

    July 1988 Convicted Interfere with public servant
    Dec. 1991 Convicted Carrying loaded firearm in vehicle / street
    Apr. 1996 Convicted Larceny
    Mar. 2001 Convicted Disorderly Conduct
    May 2005 Convicted Illegal possession of controlled substance
    May 2005 Convicted possession of drug paraphernalia

CI Creditability Statement

[10.] CI#1 has provided [Detective Draper] with useful information that has been proved reliable through independent investigation which has led to the seizure of over 300 grams of Methamphetamine and the arrest of multiple individuals. CI#1 provided this information in order to reduce CI#1's own charges.

[11.] CI#2 has provided Agent Jensen with useful information that has been proved reliable through independent investigation. CI#2 provided this information in order to reduce CI#2's own charges, however CI#2 failed to provide any further assistance and was later charged for their violations.

[12.] CI#3 has provided Agent Burrell with useful information that has been proved reliable through independent investigation. CI#3 has provided Agent Burrell with information concerning large scale narcotics dealers in the Weber County area that Agent Burrell was able to prove creditable through independent investigations. CI#3 was also able to give Agent Burrell information on the whereabouts of several fugitives that were subsequently arrested.

[13.] CI#4 has never conducted any work for the Strike Force. CI#4 is currently incarcerated and asked to speak with Agents to provide information in hopes of some assistance on his/her charges. CI#4 provided information that was proven to be true through independent investigations. CI#4 is a known methamphetamine distributor.

[14.] CI#5 has conducted work for the Strike Force for several years. As a result of the work conducted by CI#5 several arrests have been made and large quantities of methamphetamine have been removed from the streets. CI#5 has always followed the rules set forth by the Strike Force. CI#5 has provided information on numerous large scale narcotics distributors. Independent investigations showed that his information was true and accurate.

[15.] CI#6 has been working for the Narcotics Strike Force for about eight years. CI#6 has conducted numerous controlled purchases of narcotics. As a result of these purchases several search warrants have been executed. On every occasion the narcotics were found where the CI said the narcotics were being stored. CI#6 has testified in court concerning work that he/she has conducted for the Strike Force. Numerous arrests and several pound quantities have resulted in the work

conducted by CI#6. The Agents that have worked with CI#6 believe the information provided by him/her to be true and accurate.

Upon requesting the Government to identify what, if any, corroborating evidence existed as to the statements made by each of the confidential informants, Defendant learned that no independent investigation was performed. That is, Defendant learned from correspondence with Assistant U.S. Attorney Brandon Miles, and as explained by AUSA Miles at oral argument, that the claim made in each of paragraphs 10 through 15 above to the effect that the confidential informants had been proved reliable through "independent investigation" actually referred to a circular process in which the statements of the confidential informants were meant to corroborate the statements of each other.

## **ANALYSIS**

Affidavits made in support of the procurement of a search warrant are presumed to be valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). Nevertheless, a defendant may attack the validity of a search warrant on the basis of an invalid or untruthful supporting affidavit and is entitled to an evidentiary hearing inquiring into the basis for statements made in the supporting affidavit upon an initial showing that allegations in the affidavit were deliberately false or made with a reckless disregard for the truth. *Id*. "The standards of deliberate falsehood and reckless disregard set forth in *Franks* apply to material omissions, as well as affirmative falsehoods." *United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011). "Allegations of negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 171. The standard is exacting: once a defendant shows an affiant's deliberate falsehood or reckless disregard for the truth, a Franks hearing will be granted only if the affidavit would be insufficient to support a finding of probable cause for the issuance of a search warrant after all deliberately false or reckless statements have been removed. *Id*. at 171-72.

To issue a warrant, the judicial officer must have a "substantial basis for concluding that probable cause existed." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000). The Government is, of course, correct that an issuing magistrate must make a determination of probable cause based on the totality of the circumstances outlined in the Affidavit. Plf.'s Resp. Mot. Franks Hrg. 5 (Dkt. No. 40). Notably, this includes "an informant's veracity and basis of knowledge." *Danhauer*, 229 F.3d at 1006 (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). And the court agrees that it should not conduct a "*de novo* determination of probable cause," inquiring instead as to whether the magistrate had a "substantial basis" for finding probable cause. *See Gates*, 462 U.S. at 236 ("A magistrate's determination of probable cause should be paid great deference by reviewing courts."); *accord Massachusetts v. Upton*, 466 U.S. 727, 733 (1984). Moreover, to demonstrate a reckless disregard for the truth, Defendant must provide "evidence that the [affiant] in fact entertained serious doubts as to the truth of his allegations . . . [or] circumstances evincing obvious reasons to doubt the veracity of the allegations." *Beard v. City of Northglenn*, 24 F.3d 110, 116 (10th Cir. 1994). *See also United States v. Brown*, 631 F.3d 638, 645 (3rd Cir. 2011); *United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984).

Here, the Affidavit and the position taken by the Government at oral argument support a finding that, at best, the circumstances evince "obvious reasons to doubt the veracity of the allegations" such that the affiant acted with a reckless disregard for truth in drafting the Affidavit and no "substantial basis" exists for a finding of probable cause. *Beard*, 24 F.3d at 116.

Examining the Affidavit, the court finds that Paragraph 1 must be stricken. As Defendant argues, "evidence that drug *use* had previously occurred in the home does not lead to the conclusion that drug distribution is now occurring from the home." Def.'s Mem. Supp. Mot. Franks Hrg. 7 (Dkt. No. 38). And, in fact, this statement in the Affidavit about evidence of drug

5

use at the house relates to Martin Garcia and not Defendant, Andrew Garcia. Additionally, as pointed out by Defendant, the statement relates to an event that happened in May 2010—nearly 18 months before Detective Draper drafted the Affidavit at issue here. Under the circumstances of this case, that is too distant in time from the activities at issue here to constitute a fact sufficient to lead a prudent person to believe that a search would uncover contraband or evidence of criminal activity. *See United States v. Snow*, 919 F.2d 1458, 1459 (10th Cir. 1990) ("Probable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched."). Though it is true that "otherwise stale information may be refreshed by more recent events," the court finds that the statements of the other confidential informants at issue in this case are not credible for purposes of refreshing and therefore salvaging Paragraph 1 of the Affidavit.

     Similarly, the court finds an insufficient basis for Paragraphs 2 through 7 of the Affidavit to provide a "substantial basis" for a finding of probable cause given the failure of Detective Draper to provide facts substantiating how each of these confidential informants obtained their information. This undermines their basis of knowledge. *Gates*, 462 U.S. at 232-233. Their veracity is called into question by their ulterior motives conceded in the "CI Credibility Statement" portion of the Affidavit (Paragraphs 10 through 15 as numbered above). Finally, the reliability of the confidential informants is undermined by Detective Draper's misleading statement relating to "independent investigation" being performed as to each of the confidential informants. As the court learned from the briefs and at oral argument, no "independent investigation" was actually undertaken or documented; rather, the referenced "independent investigation" was in fact only each confidential informant's statements supposedly corroborating the statements of the other confidential informants. This information, however,

was not disclosed in the Affidavit or otherwise made known to the magistrate issuing the warrant.

As the Supreme Court expressed in *Franks*, "[i]f an informant's tip is the source of information, the affidavit must recite some of the underlying circumstances from which the informant concluded that relevant evidence might be discovered, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed . . . was credible or his information reliable." 438 U.S. at 165. Paragraphs 2, 3 and 4 are inadequate when analyzed in light of this standard set forth in *Franks*. The statements do not describe how or from whom the confidential informants obtained their information. The informants do not assert that they made the purchases or saw someone else make the purchases. On the face of the Affidavit, the assertions can be no more than street rumors without any indicia of reliability. The Government argues that CI#2's information was found to be reliable because it "independently corroborated the information CI#1 had provided to Agent Draper just a few weeks earlier." Plf.'s Resp. Mot. Franks Hrg. 8 (Dkt. No. 40). But without more information about how or from whom CI#2 obtained the information, it also is simply another street rumor. Two unverified statements, without any indicia of reliability certainly do not constitute the type of "independent investigation" implied by those terms to the mind of a reviewing magistrate. As Defendant argues, the use of the term "independent investigation" in this context and as used throughout the "CI Credibility Statement" portion of the Affidavit is "exceedingly misleading," obviating the credibility that Detective Draper evidently intended those words to lend the CIs' statements. Def.'s Mem. Supp. Mot. Franks Hrg. 5 (Dkt. No. 38). Additionally, the Government did not provide Defendant with any material substantiating the claim of an independent

investigation relating to CI#3's statement, as it would have been obligated to do and as requested by Defendant.

Paragraph 5, reporting information from CI#4, is internally inconsistent with other information contained in the Affidavit. In Paragraph 13, Detective Draper states that CI#4 was incarcerated at a time CI#4 claimed to be purchasing drugs every day from Defendant and his brother. More importantly, the statement is devoid of detail as to when or where CI#4 made the alleged purchases. In addition, the "CI Credibility Statement" severely undermines the veracity of the statement given that CI#4 as having never conducted any work for the strike force and being currently incarcerated. CI#4's statement lacks the reliability required to provide probable cause for a search warrant in all the ways suggested by Defendant and must be stricken. Def.'s Mem. Supp. Mot. Franks Hrg. 10 (Dkt. No. 38).

Paragraphs 6 and 7 provide slightly more detailed information about tips from CI#5 and CI#6 and thus go further in showing a basis of knowledge for the information that they provided. The tips, however, are still inadequate to support probable cause because they fail to describe the source of their information, especially in light of the absence of information surrounding the informants' histories with the police. In fact, during oral argument the Government conceded that that when Defendant requested internal police reports about the working relationship with the confidential informants, the Government had responded that none exist. The court finds this extraordinary as usual law enforcement protocol requires files to be maintained on each confidential informant with detailed reports of their activities. Such reports would be especially expected for long-term confidential informants such as CI#5 and CI#6 appear to be from their description in the "CI Credibility Statement" portion of the Affidavit.

Finally, the Government's attempt to rely on *United States v. Artez* is unpersuasive. 389 F.3d 1106 (10th Cir. 2004). *Artez* is a very different case in which a confidential informant and an "unwitting informant" assisted police in conducting two controlled purchases within approximately two weeks of each other. The affiant in *Artez* also staked out the residence where the CI had said drugs were being distributed and where he had performed two controlled purchases with the help of the CI. He included all of this information in the Affidavit, including a description of the CI's drug use. To establish the reliability of the CI's statement, the affiant explained the CI's basis for knowledge about drugs being distributed from the residence and added that he was assured of the CI's reliability because the CI had never been in custody and had come forward out of concern for the community. *Id.* at 1106-11.

At oral argument the Government appeared to rely on *Artez* for the proposition that a confidential informant's reliability or credibility can be established by an independent statement from a different confidential informant corroborating the first confidential informant's tip. It is true that the Tenth Circuit stated that "[a] tip from a second informant can also help corroborate information from a confidential informant." *Id.* at 1114. (citing *United States v. Sturmoski*, 971 F.2d 452, 455-56 (10th Cir. 1992). The court's statement provides guidance, but does not excuse the lack of other sufficient additional indicia of reliability. The affiant in *Artez* discovered that an anonymous informant had reported that his wife was buying drugs from the defendant's home, the same residence about which the affiant had received information from the confidential informant. *Id.* The court finds this scenario distinguishable in light of the weight of other corroborating evidence at play in *Artez*, including two controlled purchases. By contrast, here the chain of allegedly mutually corroborating confidential informants creates an entirely circular network of information. In this case, the court finds insufficient substance corroborating the

information outside of this closed circuit of confidential informants, none of whom provide information detailed enough to provide a substantial basis for a finding of probable cause in the first place.

Accordingly, the court must strike Paragraphs 1 through 7, thus rendering Paragraphs 10 through 15 moot despite their own credibility issues. Without these paragraphs, the court finds that there are serious questions about whether Detective Draper acted in reckless disregard for the truth in providing information from which a magistrate could reasonably find probable cause. He represented that the statements of the confidential informants had been proven to be reliable through independent investigation. It appears that Detective Draper knew that, in fact, there was no such independent investigation and that at best the statements were likely nothing more than hearsay and street rumors without the required indicia of reliability. The court orders a *Franks* hearing to probe the affiant's basis for the statements made in the Affidavit.

## **CONCLUSION**

For the reasons stated above, the court GRANTS Defendant's Motion for a *Franks* Hearing (Dkt. No. 37) on the validity of the Search Warrant. The court STAYS the Motion to Suppress (Dkt. No. 36) pending the conclusion of the *Franks* hearing.

SO ORDERED this 16th day of July, 2013.

BY THE COURT:

_____
Clark Waddoups
United States District Judge